IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| NORMAN G. GOBERT | § | PLAINTIFF |
| | § | |
| v. | § | CAUSE NO. 1:09CV673 LG-RHW |
| | § | |
| SAITECH, INC. and COMPUTER | § | |
| SCIENCES CORPORATION | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are 1) the Motion for Summary Judgment [44] filed by Defendant Computer Sciences Corporation, and 2) the Motion for Summary Judgment [46] filed by Defendant SaiTech, Inc.  Plaintiff Norman Gobert has filed responses, and the Defendants have replied.  After due consideration of the submissions and the relevant law, the Court finds no question of material fact for the jury.  Accordingly, the Motions will be granted and Gobert's claims dismissed.

FACTS AND PROCEDURAL HISTORY

Gobert was hired by SaiTech, Inc.'s Vice President, Krishna Annambhotla, on January 30, 2006 as an IT Support Specialist 1.  He was hired to work on SaiTech's NASA Shared Service Center (NSSC) subcontract at Stennis Space Center.  His duties were to provide programing support related to software for document imaging.  He was promoted to IT Support Specialist 3 in March 2006.

Sometime in the late winter or early spring of 2008, Gobert's position was moved from document imaging to the IT department, although his duties did not change.  This restructuring was accompanied by a physical move for Gobert and another Support Specialist, Ashley Morales, into a temporary office.  Gobert complained that the office

was cold and drafty. Although it had desks and necessary equipment for Gobert and Morales, the office was also used for storage, which caused some in and out traffic. Gobert and Morales used the office for approximately three months, until July 2008, when they moved into newly completed office space with the rest of the IT department.

During his tenure at SaiTech, Gobert received good performance reviews from his supervisors. However, on November 7, 2008, the NSSC revoked its approval of Gobert's assignment to the subcontract at Stennis Space Center and demanded his immediate removal from NSSC facilities. A letter sent to Annambhotla stated that "CSC functional management" had,

> documented numerous instances during the past month where Mr. Gobert's actions indicated a complete unwillingness to comply with legitimate management direction and caused unacceptable disruptions in the flow of documents into the NSSC. These incidents have done serious damage to the CSC Team's performance and have resulted in serious client concerns over our collective performance on this contract.

ECF No. 48-3 p. 5.

This prompted Annambhotla to send a letter to Gobert terminating his employment the same day. Annambhotla stated:

> As we discussed with you during your annual performance review meeting on October 16, 2008, our CSC customer had brought forth several issues with your performance. Incidents have continued to arise since the time of your performance review meeting, and have been escalated to the CSC Program Management Office.
>
> . . .
>
> SaiTech has received instruction from CSC Program Management that you are no longer authorized to work on the NSSC contract effective immediately. As SaiTech currently has no available positions that fit your skills, we are terminating your employment effective November 7,

-2-

2008.

ECF No. 48-3 p. 4.  Gobert alleges in this lawsuit that he was not terminated because of these performance issues, but because he is African-American, and/or because he is over 40 years old.  In addition, he alleges he was subjected to a hostile working environment and retaliated against.  Prior to filing this suit, Gobert received right to sue letters from the EEOC regarding charges of discrimination made against both SaiTech and CSC.[1]  The Defendants now assert that they are entitled to summary judgment as to all of Gobert's claims.  The Court will review the Motions together in view of the interrelated nature of the parties and claims.

DISCUSSION

Gobert's claims for racial discrimination, retaliation, and hostile work environment based on race are brought pursuant Title VII.  His claims for age discrimination and hostile work environment based on age are brought pursuant to the Age Discrimination in Employment Act.

**I.  CSC's "Employer" Status**

Both Title VII and the ADEA permit suits only against "employers," "employment agencies," and "labor organizations."  *See* 42 U.S.C. § 2000e-2; 29 U.S.C.

---

[1]  Gobert does not provide any information regarding what his EEOC charges consisted of, but neither Defendant challenges Gobert's Title VII and ADEA claims on the basis of exhaustion.  *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 274 (5th Cir. 2008) (The scope of a judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination).  Therefore, any exhaustion objections have been waived and Gobert's claims are properly before the Court.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

623. It is undisputed that Gobert was SaiTech's employer, but Gobert argues that CSC was also his employer, because CSC actually supervised him and removed him from the NSSC contract, which he equates to CSC terminating his employment. Gobert cites to Fifth Circuit cases applying a "joint employer" test in the context of Title VII and the ADEA that,

> focuses on whether the alleged employer had the right to hire and fire, the right to supervise, the right to set the work schedule, paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.

*Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 526 (5th Cir. 2001). Gobert has produced evidence that CSC supervised him on the NSSC project. However, there is no evidence of the other factors. CSC did not hire or fire Gobert, pay his salary, withhold taxes, provide benefits or set the terms and conditions of his employment. CSC contracted with SaiTech to provide certain information technology services, and SaiTech employed Gobert in order to provide those services. CSC became unhappy with Gobert's performance of the contracted-for services and demanded that he be removed from the project. The authority to remove Gobert from the project does not does not transform CSC into Gobert's employer for purposes of Title VII or the ADEA. *See Jones v. Norfolk So. Co.*, 348 Fed. Appx. 970, 973 (5th Cir. 2009). Therefore, CSC has no employer liability to Gobert under the employment statutes at issue and is entitled to judgment as a matter of law.

## II. Title VII Claims

A) Race Discrimination

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1).  "In the context of Title VII litigation, we recognize two types of discrimination claims: disparate treatment and disparate impact." *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).  "Disparate treatment refers to deliberate discrimination in the terms or conditions of employment, . . . on account of race, national origin, or gender." *Id.*  Plaintiff's claim here is one of disparate treatment.

"When plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000).  In order to help district courts make this determination, the U.S. Supreme Court has established a burden-shifting scheme for evaluating the claims at issue.  *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 n.3 (5th Cir. 2004).  The order of proof proceeds as follows: (1) the plaintiff must first demonstrate a *prima facie* case of discrimination; (2) then, if the plaintiff meets his burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions; (3) lastly, if the defendant meets its burden, the presumption disappears, and the issue becomes discrimination *vel non*.  *See Reeves*, 530 U.S. at 142.  The plaintiff can establish disparate treatment by showing that the defendant's explanation for the

employment action is a pretext for discrimination. *Id.* at 143. In other words, the plaintiff can meet his burden by showing that "the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Still, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. *Thornbrough v. Columbus & Greenville R.R.Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if the plaintiff fails to establish a *prima facie* case, or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

### 1. *Plaintiff's Prima Facie Case*:

Plaintiff must prove four elements to make out a *prima facie* claim for racial discrimination: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) was replaced by someone outside the protected class, or, in a disparate treatment case such as this one, that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

There is no dispute that Gobert has established the first three elements of his *prima facie* case.  The parties' disagreement centers on the fourth element - whether others similarly situated but not in Gobert's protected class were treated more favorably.

Gobert argues that Rachel Raines, the CSC IT Manager, targeted him alone for blame and removal from the NSSC contract.  *See* Memo. in Opp. 11, ECF No. 52.  He contends this is shown by 1) Raines' approval of cell phones for Caucasian IT employees but not him;[2] 2) the lack of "contemporaneous evidence" that Raines actually spoke to his SaiTech supervisor about his performance issues; and 3) failures occurring in July 2008 were found by NSSC to be related to systemic or design problems, and Gobert had no design responsibilities.

Gobert's burden at the *prima facie* stage is to show that similarly situated employees were not discharged.  Gobert has made no attempt to show that any other employee remained employed by SaiTech despite having his or her approval for the NSSC project (or any project) revoked by the contractor.  Thus, he does not establish the fourth *prima facie* element.  *Okoye*, 245 F.3d at 514 (dissimilarity existed because comparators were not barred from job location by contractor, thereby placing employer in position of finding them alternative employment).  Gobert fails to make a *prima facie* race discrimination case.

---

[2] Both CSC and SaiTech provide evidence that Gobert was not approved for a cell phone only because he was not a supervisor or department lead.

### 2. SaiTech's Legitimate, Nondiscriminatory Reason

If Gobert had established a *prima facie* case, he would not be able to show that he was terminated because of his race. SaiTech states that it terminated Gobert because it had hired him specifically for the NSSC project and did not have any alternative positions available when CSC barred him from the project. This is a legitimate, nondiscriminatory reason for his termination.

### 3. Evidence of Pretext

Because SaiTech can articulate a legitimate, nondiscriminatory reason for terminating Gobert, he must present evidence that SaiTech's reason for terminating him is a pretext for discrimination. He can show pretext either through evidence of disparate treatment or by showing that SaiTech's proffered explanation is false or unworthy of credence. *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010).

Gobert argues that SaiTech has provided no evidence that he was "undependable" as alleged by CSC, or that it "undertook any contemporaneous warning or notice of the 'performance issues' alleged against him." Mem. in Opp. 12, ECF No. 52. This appears to be an argument going to the truth or falsity of SaiTech's proffered explanation. However, any lack of evidence for Gobert's performance problems does not impact whether SaiTech's reason for terminating him was false. He was terminated not because SaiTech found him to be undependable or to have performance problems, but because  CSC barred him from the NSSC project and SaiTech had no alternative employment for him. Gobert provides no evidence that this reason is false -

that he was actually terminated because of his race.  Accordingly, SaiTech is entitled to summary judgment in regard to Gobert's race discrimination claim.

B) Hostile Work Environment

To prevail on a hostile work environment claim, a plaintiff must prove that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) such harassment was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

> We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance.

*Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (ellipsis in original) (internal citation and quotation marks omitted).  A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003).

> Gobert argues that while supervising his work, Raines took "racist actions" and
>
> had a history of otherwise inexplicable targeting of Mr. Gobert, whose ability to do the very things she demanded were hampered by her refusal to consider reasonable requests for resources (which were available to Caucasian IT co-workers) and of deliberately embarrassing and humiliating Mr. Gobert at every opportunity.

Memo. in Opp. 12, ECF No. 52.  These events were: 1) two days after he moved into the

IT department, Raines unfairly insisted he do a software demonstration in front of colleagues and co-workers; 2) Raines would not approve a company issued cell phone for him; 3) his office was moved into the cold and drafty storage room; 4) his superiors did not act on his report of a sexually explicit email; 5) during a client presentation, Raines "dramatically stopped" and asked another employee to answer the same question Gobert had just answered. *Id.* at 5-6.

None of these instances involves harassment based on race and therefore cannot provide evidence of a hostile working environment. *See Vallecillo v. United States Dept. of Housing & Urban Dev.*, 155 Fed. Appx. 764, 767-68 (5th Cir. 2005) (filtering out statements that were not based on race or national origin before determining whether harassment was severe or pervasive). Although Gobert may believe these events were motivated by a racial animus, subjective belief of a racial motivation, without more, is not sufficient to show a hostile work environment. *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. Appx. 104, 107 (5th Cir. 2009). Because Gobert has not provided any evidence of a racial motivation, his hostile work environment claim is without merit.

C) Retaliation

In retaliation cases, the plaintiff must first make the following *prima facie* showing: (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 551 (5th Cir. 2009).

Gobert alleges that the protected activity in his case was reporting an offensive email circulating in the workplace with a sexually explicit photo of a young boy. He states that he reported the email September 7, 2007, but SaiTech took no action, leaving him vulnerable in the workplace. He contends that the causal link between his report and his termination 14 months later is SaiTech's failure to take corrective action on his report. Thus, Gobert argues that SaiTech's failure to address his report of the email shows that his termination was retaliatory.

"An employee has engaged in protected activity when [he] has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998) (citations omitted). By reporting an offensive email, Gobert was not engaging in activity protected by Title VII. *See Sokolow v. City of League City*, 37 F. Supp. 2d 940, 944 (S.D. Tex. 1999) ("Isolated racist remarks by non-supervisory employees do not rise to the level of 'unlawful employment practices' prohibited by Title VII.").

Even if this were protected activity, the Court does not find a causal link between the report and Gobert's eventual termination. Gobert is required to show that SaiTech's decision to terminate his employment was based in part on knowledge of his report of the offensive email. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). There is no indication in this record that these were more than simply sequential events.

> Employers are sometimes forced to remove employees who are performing poorly, engaging in improper work conduct, or severely disrupting the workplace. . . . Precedent does not prevent [an employer] from removing such an employee simply because the employee engaged in a protected work activity months prior.

*Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

For these reasons, SaiTech is entitled to summary judgment on Gobert's retaliation claim.

## III. Age Discrimination in Employment Act Claims

Under the ADEA, it is unlawful for an employer to discharge an employee "because of such individual's age." 29 U.S.C. § 623(a).  To establish an ADEA claim, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009).

A) Age Discrimination

In an age discrimination case based on circumstantial evidence such as this one, the Court analyzes a summary judgment motion using the Title VII burden shifting scheme described above.  *Baker v. Amer. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005).

*1. Plaintiff's Prima Facie Case*:

The elements of a *prima facie* ADEA case are that the plaintiff was (1) discharged; (2)  qualified for the position; (3) within the protected class at the time of discharge; and (4) either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.  Gobert shows

evidence of all these elements.  Despite SaiTech's assertion that no one has filled Gobert's position, they agree that from time to time, a younger employee handles what were previously Gobert's tasks.  Gobert has therefore shown a *prima facie* case of age discrimination.

### 2.  *SaiTech's Legitimate, Nondiscriminatory Reason*

SaiTech's explanation for Gobert's termination is set out above - Gobert had been barred from the NSSC project and SaiTech did not have any alternative positions available.  This is a legitimate, nondiscriminatory reason for his termination

### 3.  *Evidence of Pretext*

Gobert makes no argument and provides no evidence that SaiTech's reason for terminating him was pretext for discrimination on the basis of his age.  Accordingly, SaiTech is entitled to summary judgment in regard to Gobert's ADEA claim.

B) Hostile Work Environment - Age

The Fifth Circuit has never held that the ADEA contemplates hostile work environment claims.  *Mitchell v. Snow*, 326 Fed. Appx. 852, 854 n.2 (5th Cir. 2009).  However, the Court need not address this issue since Gobert presented no evidence of harassment related to his age.  He failed to identify a single age-related comment or incident that occurred during his employment at SaiTech.  His hostile work environment claim would therefore not be viable even if it were recognized under the ADEA.

### CONCLUSION

SaiTech and CSC have shown that there is no question of material fact for the

jury in regard to any of Gobert's claims against them.  Accordingly, the Motions for Summary Judgment will be granted and Gobert's claims dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [44] filed by Defendant Computer Sciences Corporation is **GRANTED**.  Plaintiff's claims against Computer Sciences Corporation are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the Motion for Summary Judgment [46] filed by Defendant SaiTech, Inc. is **GRANTED**.  Plaintiff's claims against SaiTech, Inc. are **DISMISSED**.

**SO ORDERED AND ADJUDGED** this the 18th day of November, 2010.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE